Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E, #1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelbserglaw.com

*Counsel for Plaintiff and Proposed Classes*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IDA LE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPEARANZ INC., d/b/a UNIWIGS INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Ida Le ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Appearanz Inc., d/b/a UniWigs Inc. ("Defendant" or "UniWigs"). Plaintiff makes the following allegations based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff which are based on her personal knowledge and alleges the following:

## PRELIMINARY STATEMENT

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant arising from its use of surreptitiously tacking on "Route Package Protection" fees on all orders placed on its website without consumers' consent.

2. When consumers make a purchase through UniWigs' website, they browse products, select items from the online store, add them to their cart, and enter

their billing and shipping information. Up until this point, this is all standard for an online purchasing experience. However, UniWigs vastly diverts from the standard experience on the final payment screen by secretly tacking on a so-called "Route Package Protection" Fee, which is a percentage of the transaction that is automatically added to all orders.

3. Never do consumers affirmatively choose to add the "Route Package Protection" to their shopping cart. Instead, UniWigs secretly adds this fee without consumers' consent right before the purchase is complete.

4. Automatically sneaking in this fee has been deemed by the FTC to be a "Digital Dark Pattern" designed to trick or manipulate consumers into making choices that they might not otherwise have made.

5. As discussed in detail herein, sneaking in this Fee is deceptive and unfair, since: a) UniWigs automatically adds this fee to consumers' carts without their permission and does not disclose this added Fee until the very last step in the multi-step purchasing process; b) the Fee itself is deceptively named and described; and c) UniWigs incorrectly represents that delivery is free for orders over $200.

6. UniWigs hides, disguises, and fails to divulge that a "Route Package Protection" fee will be automatically added to all orders to deceive consumers into making purchases.

7. Automatically adding additional products or services to online shopping carts without explicit consumer consent is a deceptive practice.

8. UniWigs omits and conceals material facts about purchasing items on UniWigs' website, never once informing consumers in any disclosure, at any time, that the so-called "Route Package Protection" Fee will be automatically and surreptitiously added to all orders.

9. Despite its own responsibilities to ensure the care and delivery of products it sells and ships to consumers until they are delivered, UniWigs utilizes deceptive tactics to foot the bill on its customers, tricking them into paying for services already

provided and forcing them to subsidize UniWigs' delivery liabilities and customer support costs, all to the benefit of UniWigs' bottom line.

10.     In fact, Route promises online retailers that it can help retailers make more money from the shipping rates they charge consumers. For example, Route promises to help retailers "protect" their "bottom line" with Route's package protection. [1]

11.     UniWigs, through its deception, protects its bottom line. Specifically, UniWigs installed a widget on its website that adds a hidden, pre-selected box or toggle that automatically adds junk fees like "Route Package Protection" fees, to all orders. This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to Defendant.

12.     Hundreds of thousands of UniWigs customers like Plaintiff have been assessed a hidden fee for which they did not bargain, and for which they derived no benefit.

13.     Consumers like Plaintiff reasonably understand UniWigs' advertised price to disclose the total cost they will pay for their products, as well as the costs of delivery, including any related costs associated with loss, damage, or theft of their purchase in transit.

14.     By unfairly obscuring its addition of a "Route Package Protection" Fee to consumers' shopping carts, UniWigs deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true prices and fees.

15.     To make matters worse, upon information and belief, UniWigs is aware that by installing the Route widget, which automatically opts in consumers to "Route Package Protection", most consumers will unknowingly purchase the protection.

---

[1] https://route.com (last accessed June 12, 2026)

16.    Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay UniWigs' surreptitiously added-on fee.

## PARTIES

17.    Plaintiff Ida Le is a resident and a citizen of Arcadia, California.

18.    Defendant Appearanz Inc., d/b/a UniWigs Inc. is a retailer incorporated and headquartered in Chino, California.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.    This Court has general personal jurisdiction over Defendant because Defendant maintains its principal place of business in California, regularly conducts business in California, and enters into contracts within the state of California.

21.    Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.    UniWigs' Website Fails to Bind Users to Any Terms of Service

22.    When a consumer selects an item for purchase on the UniWigs website, they then enter into a multi-step purchasing process in which they are first shown a screen displaying their shopping cart and a subtotal, as seen on the following page.




23.     Next, as depicted on the following page, a consumer is shown a screen that requires the entry of personal contact information, including name, phone number, email address, and billing address.

[picture shown on next page]



24.    After consumers input their contact information, they are prompted to press the "SAVE" button which directs consumers to select their delivery method, as shown below.



25.    Next to the delivery method, UniWigs includes a hyperlink labeled "Shipping Policy," which reiterates the offer of free shipping on orders exceeding $200 and further states that U.S. ground shipping costs $17 for purchases under $200, while international shipping costs $29.89 for purchases under $200.

26.    Nowhere in this policy does UniWigs represent that consumers will automatically be assessed a Route Package Protection Fee in addition to any shipping costs.

27.    Finally, consumers are directed to input their payment information to finalize the transaction.



28.    During the multi-step process, UniWigs users are never required to view UniWigs' terms of service and are never required to affirmatively consent to UniWigs' terms of service.

29.     As such, Plaintiff and consumers were not provided with adequate notice of UniWigs' Terms of Service and thus are not bound to them.

**B.     UniWigs' Use of Route**

30.     UniWigs is a retailer whose hair products may be purchased online through its website uniwigs.com

31.     When consumers purchase items through UniWigs' website, Defendant automatically and surreptitiously adds "Route Package Protection" into their shopping carts at the last stage of the transaction, which purports to provide shipping insurance for their product.

32.     Pursuant to the Uniform Commercial Code ("UCC"), the default rule is that a merchant seller cannot transfer risk of loss to the buyer until the buyer has actually received the merchandise. *See* Unif. Commercial Code § 2-509(3); *see also* Cal. Com. Code § 2509(3).

33.     As a result of this inherent risk, ecommerce retailers purported to spend in excess of 18% of every dollar gained through online sales towards fulfillment costs like packaging, delivery, and customer support.[2]

34.     Route is an e-commerce service provider that purports to relieve retailers of these costs in two ways: 1) providing "shipping insurance," which shifts the risk of loss to Route, the carrier, rather than remaining with the merchant; and 2) providing customer support for shipment related issues.

35.     Route touts that it provides "instant resolutions and world-class support" to a retailer's customers, having resolved over one million shipping related customer support tickets. For a fee as low as $349/month, a retailer can offload its potential liability for lost, stolen or damaged shipments to Route, saving the significant costs it would otherwise have to spend itself on delivery liabilities and customer support resolutions.

---

[2] *See* https://gcelogistic.com/e-commerce-grows-retailers-find-fulfillment-costs-rising-step/

36.    However, the way Route can offer such a low-cost service, and the way the retailer can achieve such great savings, is that Route charges the **consumer** a "Route Package Protection" Fee on each transaction.

37.    As a matter of course, the consumer who bears the expense of this fee is not afforded any additional security or "insurance" as to the successful and safe delivery of their purchase; by default, the merchant seller bears the risk of loss until the goods are received by the buyer.

38.    Accordingly, the only insuring effect is to the benefit of the seller, who has shifted any of that liability to Route.

39.    Consequently, rather than paying for any benefit that they would otherwise not receive, UniWigs uses Route to make consumers pay separately for **its own** insurance and customer support needs, all the while benefiting UniWigs' bottom line to consumers' financial detriment.

40.    Reasonable consumers rely on Defendant's representations and omissions regarding the shipping protection, which Plaintiff did in this case, and Defendant deceives them by overtly and implicitly misrepresenting that absent their purchase of the Route Package Protection, consumers would bear the risk of loss or damage to their ordered goods.

41.    To make matters worse, UniWigs uses deceptive, dark pattern practices to trick consumers into unwittingly bearing the costs of this erroneous fee.

**C.    Sneaking in and Automatically Adding "Route Package Protection" is Misleading and Deceptive**

42.    The FTC defines unlawful dark patterns to include any online "design practices that trick or manipulate users into making decisions they would not otherwise have made and that may cause harm."[3]

---

[3]FTC, Bringing Dark Patterns to Light, at 2 (September 2022), https://www.ftc.gov/reports/bringing-dark-patterns-light.

43. UniWigs uses manipulative and deceptive user-interface (i.e. "dark patterns") to trick consumers into purchasing Route Package Protection.

44. First, this Route Package Protection is automatically added to consumers' shopping carts, without their affirmative consent, at the final stage of the purchasing process after consumers have invested ample time and have already decided to make a purchase.

45. Because the Route Protection Package is surreptitiously added to consumers' shopping carts at the very end of a transaction, many consumers may not realize that they are being charged for this unwanted product or service, leading to unintentional purchases and overpayments by consumers.

46. Similarly, Defendant misleads reasonable consumers by failing to disclose the nature of the charge, or that the fee does not provide any additional value to the consumer, as their packages are already "insured" in that Defendant, as a merchant-seller, bears the risk of loss or damage to the goods until they are duly delivered to the consumer.

47. Further, instead of obtaining consumers' express and informed consent before adding this charge for an unnecessary product or service, UniWigs' checkout page presents the "package protection" as a *prechecked* box in small script. This is unlike other companies that require consumers to affirmatively check a box to agree to an additional product or service such as shipping protection or express shipping options.

48. UniWigs prechecks the box to dupe consumers into paying for this unnecessary fee, capitalizing on the fact that countless consumers will not notice the additional charge.

49. The FTC states, "[f]or [y]ears, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated*

*Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press- releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

50.    Additionally, the FTC notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."[4]** Similarly, an item automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

51.    Finally, adding to the consumer confusion is that there is no clear way to avoid paying for the fee. Unlike other products that can be easily removed from a shopping cart, the Route Package Protection can only be removed if a consumer unselects the prechecked box, displayed separate and apart from their shopping cart "bag".

52.    Simply put, many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. And others still notice the previously undisclosed fee, but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into Defendant's system.

53.    UniWigs fails to adequately disclose to consumers how to avoid paying for the Route Package Protection.

**C.    UniWigs Omits and Conceals Material Facts About the Costs of Delivery**

54.    First, because the "Route Package Protection" Fee is not disclosed until the last stage of checkout, UniWigs misrepresents the cost of the products on which the consumer relies in placing an order.

---

[4] https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

55. Further, UniWigs prominently advertises on multiple pages of its website that it can provide worldwide shipping for no additional cost for orders over $200. In its Shipping Policy, UniWigs also advertises that U.S. ground shipping costs $17 for purchases under $200, while international shipping costs $29.89 for purchases under $200.

56. However, these representation of shipping costs are false because UniWigs surreptitiously tacks on an additional delivery fee described as the Route Package Protection Fee. Moreover, the Fee is surreptitiously combined into the "subtotal" along with the actual retail items purchased.

57. By assessing the Route Package Protection Fee to all orders placed on UniWigs' website, the advertised price for any specific hair product is false.

58. By unfairly obscuring its true fees to consumers, UniWigs deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true fees. Indeed, other major fashion retailers in the U.S. do not assess fees outside of those properly disclosed at the outset of a consumer's order.

59. In short, the disclosed item cost on UniWigs' website is not accurate, due to the Route Package Protection Fee that UniWigs deceptively adds late in the ordering process.

60. UniWigs does not inform consumers of the true costs of its products and delivery service.

61. Moreover, the Route Package Protection Fee assessed is never reasonably disclosed to consumers until it shows up as a line item in their shopping cart—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that additional fees will be imposed on their purchases.

62. Many consumers do not notice that these fees are being added to their order. Others believe that they have no choice but to pay these fees. And others still notice the previously undisclosed fees but decide to go through with the purchase anyway unsure of how it can be removed from their Cart after it was automatically

added: they have already invested substantial time and effort inputting their information into UniWigs' system. Consumers are disincentivized to start over and research whether there is a way to avoid these fees, or to uncover that Defendant itself is responsible for the risk of loss during shipment by default, rendering the "protection" superfluous. The deceptive checkout practice has done its job and diverted the inflated sale to UniWigs.

63. In any of these situations, the result is the same: a consumer who otherwise would have found a way to pay without paying the fees, ends up paying the fees. Defendant profits while Plaintiff and the class pay more.

64. This is a classic case of "Drip pricing". "Drip pricing" works because as research has shown, "our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that 'investing more time into searching for it will not be worthwhile.'"[5]

65. By unfairly obscuring its charges to consumers, UniWigs deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true charges.

**D.    The Route Package Protection Fee Is a Junk Fee That Violates Federal Guidance**

66. UniWigs' fee is precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition

---

[5] Santul Narkar, *It's a Great Deal, Before the 'Drip Pricing'*, New York Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University).

by making it impractical for consumers to compare prices, a linchpin of our economic system.[6]

67.    As the Federal Trade Commission said recently in its effort to combat Junk Fees:

[M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

68.    In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") to expressly make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay."[7] As the California Department of Justice stated:

Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge

[6] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

[7] *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed June 12, 2026).

customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id.* at p. 4 (emphasis added)

69.     In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." Fed. Trade Comm'n, *How to Make Effective Disclosures in Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

70.     Defendant uses deceptive tactics to induce consumers into entering transactions and then tricks them into paying for something they are already paying for by the very nature of Defendant's merchant business.

71.     Defendant violates federal guidance and California Law by adding the Route Package Protection fee as a line item well after the consumer "add[s] to shopping cart," and by charging consumers a fee that purports to provide shipping insurance that Defendant, as a matter of law, was already required to provide.

### E.     Plaintiff's Experience

72.     Plaintiff used the UniWigs website to place an order for a hair topper on February 14, 2026.

73.     When using the website, based on Defendant's pricing representations, Plaintiff was repeatedly informed that her cart total would be $359.00.

74.     However, unbeknownst to Plaintiff, Plaintiff's purchase included a surreptitious Route Package Protection Fee amounting to $9.18 that—for the reasons described above—in fact represented an additional product and delivery fee tacked on to Plaintiff's order.

75.     Plaintiff would not have made this purchase if she had known that UniWigs would tack on additional fees and/or she would have removed the charge if she had known it was a junk fee and/or not mandatory.

76.     If she had known the true cost of her order, she would have chosen another method or merchant for ordering her hair toppers and other hair accessories.

77.     As a result of Defendant's deceptive addition of a Route Protection Package, Plaintiff overpaid for her UniWigs purchase.

## CLASS ALLEGATIONS

78.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and Classes of similarly situated persons. The Classes are defined as follows:

**Nationwide Class**: All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered products from charlotterusse.com, and were assessed a so-called "Route Package Protection" Fee.

**California Subclass**: All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered products from charlotterusse.com, and were assessed a so-called "Route Package Protection" Fee.

79.     Collectively, the Nationwide Class and the California Subclass shall be referred to as the "Classes."

80.     Excluded from the Classes is Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

81.    **Numerosity**:  At this time, Plaintiff does not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands and thus are so numerous that joinder of all members is impractical.  The number and identities of the members of the Classes are administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

82.    **Commonality**:  There are questions of law or fact common to the Classes, which include, but are not limited to the following:

a.    Whether during the class period, Defendant deceptively represented its Fees for orders on charlotterusse.com;

b.    Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c.    Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.    Whether Defendant's alleged conduct constitutes violations of the laws asserted;

e.    Whether Plaintiff and members of the Classes were harmed by Defendant's misrepresentations;

f.    Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

g.    Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent the amount for orders on charlotterusse.com.

83.    **Typicality**:  Like Plaintiff, many other consumers ordered products for delivery from UniWigs' website, believing that the price reflected throughout the check-out process represented the total Plaintiff and other consumers would pay for their order. Plaintiff's claims are typical of the claims of the Classes because Plaintiff and each Class member was injured by Defendant's false representations about the true

nature of UniWigs' products and delivery service. Plaintiff and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Classes emanate from the same legal theory and Plaintiff's claims are typical of the claims of the Classes, therefore, class treatment is appropriate.

84.   **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Classes and does not have any interests adverse to those of the Classes.

85.   **The Proposed Class Satisfies Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole. Plaintiff remains interested in ordering products for delivery through UniWigs' website; there is no way for her to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

86.   Specifically, Defendant should be ordered to disclose the true costs of its products and delivery service.

87.   Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

88.   **The Proposed Classes Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual member of the Classes.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

89.　Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-88 as if fully set forth herein.

90.　To the detriment of Plaintiff and the Nationwide Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

91.　Plaintiff and the Nationwide Class conferred a benefit on Defendant when they paid Defendant the "Route Package Protection" Fee, which they did not agree to and could not reasonably avoid.

92.　Plaintiff and the Nationwide Class members conferred a benefit on Defendant when they paid the "Route Package Protection" Fee, which they did not bargain for and could not reasonably avoid, and for which the associated benefits were already owed to them by default under their agreements with Defendant.

93.　As a result, Defendant was benefited in that it was able to relieve itself of its obligations and liabilities related to the risk of loss in delivering its goods to Plaintiff and the Class members, and the costs that would otherwise be associated with fulfilling these delivery obligations, including customer support costs.

94.　Plaintiff and the Nationwide Class members received no benefit for which they were not already entitled as a result of Defendant's conduct.

95.　Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

96.　Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

97.　Plaintiff and the Nationwide Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## SECOND CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, et seq.)
### (On Behalf of Plaintiff and the California Subclass)

98.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-88 as if fully set forth herein.

99.    Plaintiff brings this claim on behalf of herself and the California Subclass.

100.    In this Second Claim for Relief, the California Subclass is hereinafter referred to as the "Class".

101.    Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

102.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

103.    The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

104.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

105.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

106.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

107. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting the presence and nature of its "Route Package Protection" Fee.

108. Defendant's acts and practices offend an established public policy of truthful advertising and fee disclosure in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

109. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

110. Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

111. Defendant's business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

112. Plaintiff relied on Defendant's misrepresentations in making her purchase.

113. By falsely marketing its products and delivery services, Defendant deceived Plaintiff and Class members into making purchases they otherwise would not make and paying more than they should have.

114. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

115. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make

restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

116.   Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

117.   Plaintiff has no adequate remedy at law in part because Defendant continues to add its Route Protection Package fees to purchases. Plaintiff also has an interest in using UniWigs in the future should they remove this fee and/or disclose it appropriately. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

## THIRD CLAIM FOR RELIEF
### False and Misleading Advertising
### (Bus. & Prof. Code §§ 17500, et seq.)
### (On Behalf of Plaintiff and the California Subclass)

118.   Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-88 as if fully set forth herein.

119.   Plaintiff brings this claim on behalf of herself and the California Subclass.

120.   In this Third Claim for Relief, the California Subclass is hereinafter referred to as the "Class".

121.   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

122. Further, the FAL provides that: "Any advertisement, including any advertisement over the Internet, soliciting the purchase or lease of a product or service, or any combination thereof, that requires, as a condition of sale, the purchase or lease of a different product or service, or any combination thereof, *shall conspicuously disclose in the advertisement the price of all those products or services*." Cal. Bus. & Prof. Code §17509(a).

123. Defendant materially misrepresents the true costs of its products and services by 1) surreptitiously adding the Route Protection Package to consumers' carts without their consent; 2) falsely advertising zero cost shopping on orders over $200; and 3) failing to disclose in its advertisements the true price of all products and services charged.

124. Defendant knowingly misrepresents the costs of its products in its online advertisements

125. Further, Defendant materially misrepresents the character and nature of the purported service provided through the Route Package Protection Fee, as it provides no additional benefit to consumers.

126. Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

127. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

128. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

129. Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

130.   Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Consumer**
**Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

131.   Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-88 as if fully set forth herein.

132.   Plaintiff brings this claim on behalf of herself and the California Subclass.

133.   In this Fourth Claim for Relief, the California Subclass is hereinafter referred to as the "Class".

134.   This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's products and delivery services offered to consumers in exchange for payment are "transactions" within the meaning of California Civil Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

135.   Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of UniWigs products:

  a. "Representing that goods or services have . . . characteristics . . . that they do not have";

  b. "Using deceptive representations . . . in connection with . . . services";

  c. "Advertising goods or services with intent not to sell them as advertised"; and

  d. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges."

136. Specifically, UniWigs affirmatively and knowingly misrepresented the price of any given product on its website. UniWigs failed to inform consumers in any disclosure, at any time, that the so-called "Route Package Protection" Fee would be automatically tacked on to their purchase total at the last possible opportunity.

137. Further, UniWigs affirmatively and knowingly misrepresented the purpose and nature of the Route Shipping Protection Fee, as it provides no additional benefit to consumers that they are not already entitled to.

138. At no time does Defendant disclose the true nature of its "Route Package Protection" Fee; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

139. Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers and will continue to mislead consumers in the future.

140. Plaintiff relied on Defendant's representations in making her purchase.

141. As a result of Defendant's deceptive practices, Plaintiff overpaid for her purchase.

142. As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class members have suffered and will continue to suffer damages.

143. Pursuant to California Civil Code section 1782(a), Plaintiff's counsel provided proper notice to Defendant of Plaintiff's intent to pursue damages under the Consumers Legal Remedies Act, and provided Defendant a reasonable opportunity to cure.

144. Accordingly, Plaintiff is entitled to recover damages, reasonable attorneys' fees, and all other relief available under law.

145. Pursuant to Cal. Civ. Code § 1750, et seq., Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive pricing practices in violation of the CLRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Classes seek an Order:

1.     Certifying the proposed Classes and Subclass;

2.     Declaring that Defendant is financially responsible for notifying the Classes members of the pendency of this suit;

3.     Declaring the Defendant has committed the violations of law alleged herein;

4.     Providing for any and all injunctive relief the Court deems appropriate;

5.     Awarding statutory damages in the maximum amount for which the law provides;

6.     Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7.     Providing for any and all equitable monetary relief the Court deems appropriate;

8.     Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9.     Awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

10.     Awarding pre- and post-judgment interest to the extent the law allows; and

11.     Providing such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: June 16, 2026

By: */s/ Scott Edelsberg*
Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**

1925 Century Park E #1700
Los Angeles, CA 90067
Tel: (305) 975-3320
Email: scott@edelsberglaw.com


Tonyia Johnson (*pro hac vice* forthcoming)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
tjohnson@shamisgentile.com
Tel: (305)-479-2299